**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TWANETTA R. ROLLINS,**

    **Plaintiff,**

vs.                                                 Case No. 4:24-cv-413-MW-MAF

**PREMIER MOTORCAR
GALLERY, INC. d/b/a PREMIER
MOTORCARS,**

**and**

**OMARSHARIF A. GEORGE,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, initiated this case by filing a civil complaint alleging unfair trade practices and misrepresentations relating to an automobile purchase. ECF No. 1. Plaintiff paid the filing fee, ECF No. 2, and is proceeding on her amended complaint, ECF No. 5. On January 27, 2025, Defendants filed an amended motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. ECF No. 19. Plaintiff filed a response in opposition on February 26, 2025. ECF No. 23. Defendants' motion is ripe for review.

**I.**     **Standard of Review – Motion to Dismiss**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff

must allege enough facts in the complaint that show entitlement to relief is plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Asking for plausible grounds…does not impose a probability requirement at the pleading stage." Id. at 556. Instead, a claim is plausible when the court can draw "a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); See also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019).

At this stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) (internal marks omitted). Courts must disregard any conclusory allegations or legal conclusions masquerading as fact, assume the remaining facts are true—however doubtful—and determine if those facts are sufficient to proceed. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The pleading standard is flexible, and pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986). That said, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006). This is to prevent a "largely groundless claim" from

proceeding through discovery. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005).

## II.     Allegations of the Amended Complaint, ECF No. 5

The following account of the facts comes from the amended complaint ("complaint"). See ECF No. 5 at 4-7. As discussed above, the Court accepts the complaint's non-conclusory factual allegations as true.

On November 4, 2022, Plaintiff texted Defendant George requesting to purchase a truck. Id. at 4. Defendant George was employed as a sales associate by Defendant Premier Motorcar Gallery Inc. ("Premier"), a car dealership in Tallahassee, Florida. Id. On November 30th, Defendant George asked Plaintiff if she was interested in a warranty, to which Plaintiff replied that she wanted GAP insurance and any other available options. Id. On December 4th, Plaintiff was contacted by a loan officer acting on behalf of Defendant Premier. Id. Plaintiff informed the loan officer that she was willing to pay a maximum monthly payment of $500. Id. Later that day, Defendant George informed Plaintiff that the bank approved her for a 2015 Chevy Silverado 1500 truck priced at $21,595. Id. Plaintiff accepted this offer. Id. On December 5th, Plaintiff traded in her previous car, made a $1,500 down payment, and signed a $25,357.54 bill of sale for the truck. Id. at 5. Defendant George told Plaintiff he would provide her a copy of the contract

after it was signed by his boss. Id.

On December 7th, Plaintiff was contacted by One Main Financial, informing her that Defendant George had not sent them the necessary documents to proceed with financing the truck. Id. Plaintiff then texted Defendant George to notify him of One Main Financial's attempts to contact him. Id. The next day, Plaintiff sent One Main Financial her bank statements and identification. Id. On December 9th, Plaintiff informed Defendant George that she completed her documents and planned to pick up the truck later that day, to which Defendant George replied that he would call her when the mechanic was done and instructed her "not to discuss anything about the truck." Id. Plaintiff picked up the truck on December 10th. Id.

On December 11th, Plaintiff contacted Defendant George about issues with the truck. Id. Defendant George assured Plaintiff that they would fix the problem and picked up the truck two days later. Id. On December 22nd, Plaintiff texted Defendant George about the truck, telling him that she "felt played." Id.

On January 13, 2023, Defendant George provided Plaintiff with the bill of sale, which had an increased price of $29,000 and a higher monthly payment of $700. Id. at 6-7. Defendant George claimed that One Main Financial would not finance Plaintiff for the original $25,000 due to mileage

and instructed Plaintiff not to speak to them. Id. at 6. After ceasing her monthly payments in April or May of 2024 due to the higher price and ongoing mechanical issues, One Main Financial repossessed the truck on an unspecified date. Id. at 6-7.

Plaintiff claims Defendants violated the Truth in Lending Act ("TILA") by misrepresenting the vehicle price and failing to provide accurate financing terms. Id. at 8. Plaintiff also claims Defendants violated Section 5 of the Federal Trade Commission ("FTC") Act due to fraud and misrepresentation, as well as FTC regulations requiring a buyer's guide be displayed on used vehicles. Id. at 9. Additionally, Plaintiff claims Defendants violated Florida regulations requiring "As Is" signs. Id. Plaintiff also claims Defendants violated unspecified federal and Florida law "against deceptive practices" by using "bait and switch" tactics. Id. Plaintiff further alleges a breach of contract under "federal common law." Id. Last, Plaintiff claims that Defendants' use of unfair trade practices violated her rights protected in both the FTC Act and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Id.

Plaintiff seeks compensatory and punitive damages, the rescission of the contract, and injunctive relief. Id. at 8, 11.

### III.   Amended Motion to Dismiss, ECF No. 19

Defendants argue dismissal is warranted because Plaintiff fails to state

a federal claim. ECF No. 19 at 5. First, they assert Plaintiff's TILA claim for monetary damages is time-barred by the one-year statute of limitations. Id. at 6. Since Plaintiff bought the truck in December 2022, "any failure to make required TILA disclosures would have occurred then." Id. Additionally, Defendants argue that Plaintiff would have been aware that she had not received proper TILA disclosures when making her first monthly payment in early 2023. Id. As such, the one-year statute of limitations expired prior to the filing of the complaint and Plaintiff's TILA claim for damages is "barred from what is alleged on the face of her own pleading." Id. Defendants also contend that TILA does not include a right of rescission for "this type of consumer transaction." Id. at 7.

Next, Defendants argue that the FTC Act does not provide Plaintiff with any private right of action because "only the FTC may pursue any claims stemming from alleged violations of those provisions." Id. at 7. Defendants also argue that no claims for breach of contract arise under "federal common law," but arise solely under state law. Id. at 8. Thus, Defendants assert that Plaintiff's claim of breach of contract under federal common law should also be dismissed. Id. Finally, Defendants argue that because Plaintiff fails to state a federal claim, the Court should dismiss any remaining state law claims for lack of subject matter jurisdiction. Id. at 2.

## IV. Plaintiff's Response, ECF No. 23

Plaintiff cites to eleven cases which purportedly support her TILA and FDUPTA claims. See ECF No. 23 at 4-11. Only three are legitimate cases and holdings: Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. 259 (2015) (three-year period of rescission for a home loan under TILA); McOmie-Gray v. Bank of America Home Loans, 667 F. 3d 1325 (9th Cir. 2012) (TILA three-year rescission period for a home loan is separate from the one-year period for money damages); and Frazile v. EMC Mortgage Corp., 382 Fed. App'x. 833 (11th Cir. 2010) (one-year limitations period for damages action under TILA). See Id. at 5, 10.[1]

The remaining eight cases Plaintiff cites are either not real or resemble a real case while misstating the case holding:

- Plaintiff claims that "in Williams v. Quicken Loans, Inc., 571 U.S. 103, 105 (2013), the Supreme Court held that TILA's rescission provision allows for the cancellation of a loan when the creditor fails to meet its disclosure obligations." ECF No. 23 at 4. Upon review, the reporter number is non-existent and there is no Supreme Court case with that title. There is an Eastern District of Michigan case with that title, but it involves an employment discrimination action. See Williams v. Quicken Loans, Inc., 2017 WL 6947879 (E.D. Mich. December 15, 2017).

---

[1] Plaintiff fails to specify that all three cases involve home mortgage transactions, not auto loans. Instead, she states things like: "The U.S. Supreme Court confirmed [in Jesinoski] that consumers have a statutory right to rescind under TILA within the three-year period, without needing judicial intervention." ECF No. 23 at 5. As explained later, only certain types of loans can be rescinded under TILA—auto loans are not one of them.

- Plaintiff cites <u>Hernandez v. Apple Auto Wholesalers of Waterbury, LLC</u>, 2017 WL4677308 (D. Conn. Oct. 17, 2017) for the proposition that "a consumer may rescind an auto loan under TILA even when issues with the vehicle arise after the sale" and "a fraudulent misrepresentation can extend the rescission period allowed under TILA." ECF No. 23 at 4, 6, 11. The Westlaw citation comes back to legislative history from a 2017 House Judiciary Committee bill relating to "transparency of payments made from the Judgment Fund." <u>See</u> H.R. REP. 115-348. The actual case is <u>Hernandez v. Apple Auto Wholesalers of Waterbury LLC</u>, 460 F. Supp. 3d 164, 179 (D. Conn. 2020). It has nothing to do with rescission of an auto loan. Rather, it granted default judgment and actual damages under TILA for inflation of an auto loan downpayment.

- Plaintiff claims Florida District Courts of Appeal have "upheld the applicability of the three-year [TILA] rescission period in auto transactions" and "affirmed that TILA rescission applies to auto loans." ECF No. 23 at 6-7. She cites <u>Hodge v. Citifinancial, Inc.</u>, 2012 (Fla. Dist. Ct. App. 2012) and <u>Miller v. Santander Consumer USA, Inc.</u>, 215 So.3d 138 (Fla. Dist. Ct. App. 2017). ECF No. 23 at 6. The Court could not find any cases within the State of Florida named <u>Hodge v. Citifinancial</u> or <u>Miller v. Santander Consumer</u>. While there are several with those names from federal district courts outside of Florida, none deal with TILA or rescission.

- Plaintiff cites to <u>Smith v. Highland Bank</u>, 108 F.3d 1347 (8th Cir. 1997). ECF No. 23 at 7. The reporter citation points to <u>Foy v. Schantz</u>, an 11th Circuit case from 1997 dealing with diversity jurisdiction. It appears the actual case dealing with TILA rescission (again, with a home mortgage) is <u>Smith v. Highland Bank</u>, 108 F.3d 1325 (11th Cir. 1997).

- Plaintiff cites to <u>State v. Florida Consumer Action Network</u>, 830 So. 2d 148 (Fla. 1st DCA 2002) in support of her argument regarding FDUTPA. ECF No. 23 at 9. The case and citation are real. The holding, however, has nothing to do with deceptive practices and "misrepresentation of GAP insurance," as Plaintiff represents—it involves the constitutionality of revisions to state tort law.

- Parker v. U.S. Bank Nat'l Ass'n, 2014 (M.D. Fla. Nov. 25, 2014) is not a Middle District of Florida case and does not "allow claims under FDUTPA for fraudulent misrepresentations that caused financial harm to consumers." ECF No. 23 at 9. There is a case with a similar name from the 11th Circuit but it deals with Georgia foreclosure law. See Parker v. U.S. Bank, 580 Fed. App'x. 776 (11th Cir. 2014).

- Finally, Plaintiff claims Santos v. State Farm Mut. Auto. Ins. Co., 33 So.3d 49 (Fla. 4th DCA 2010) "[confirms] that fraud occurs when a defendant intentionally misleads the plaintiff, causing financial injury." ECF No. 23 at 9-10. The reporter number is non-existent. There is a case with the same name from Florida's 2nd DCA, but it concerns liability coverage under a homeowners' and umbrella insurance policy and does not mention fraud a single time. See Santos v. State Farm Mut. Auto. Ins. Co., 707 So. 2d 1181 (Fla. 2nd DCA 1998).

The irony of Plaintiff using fake legal citations to support her claim of fraudulent and deceptive practices is not lost on the Court. Sadly, such a practice is increasingly more common in courts across the country with the rise in popularity and accessibility of artificial intelligence (AI) platforms like ChatGPT. And while the Court is not yet certain Plaintiff used one of those platforms, her citations "have the hallmarks of cases generated by AI found in other courts." Sanders v. United States, 176 Fed. Cl. 163, 169 (2025) (collecting cases and explaining how "[f]ake cases generated by AI often have reporter citations that lead to cases with different names, in different courts, and about different subjects"). "It is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent

of AI, courts have seen a rash of cases in which both counsel and pro se litigants have cited such fake, hallucinated cases in their briefs." Id.

Plaintiff does properly concede that her claim for money damages under TILA is barred by the one-year statute of limitations. ECF No. 23 at 7 (Plaintiff "is seeking rescission, not damages"). But she fills the remainder of her response with citations to authorities that appear to legitimately support her positions on first glance, yet are wolves in sheep's clothing. Plaintiff "cites the authorities…as saying things they do not say—and for propositions of fact and law that they do not support." United States v. Burke, Case No. 8:24-cr-68-KKM-TGW (M.D. Fla. May 15, 2025). For example, Plaintiff repeatedly claims (and cites to cases in support) that TILA rescission applies to auto loans. ECF No. 23 at 4, 6, 7, 11. Actual, non-AI generated cases say the opposite. See infra at 14-15.

"While there is no prohibition against the use of technology to aid in the preparation of court filings, there is a duty of candor to the Court, and that duty applies to pro se plaintiffs." O'Brien v. Flick, No. 24-61529-CIV, 2025 WL 242924, at *5 (S.D. Fla. Jan. 10, 2025). Plaintiff signed the Rule 11(b)(2) certification on the complaint form. ECF No. 5 at 12. It states:

> As required by Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; **(2) is**

**supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law**; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Id. (emphasis added). As the Second Circuit has highlighted, "Rule 11 require[s] that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." Park v. Kim, 91 F.4th 610, 615 (2d Cir. 2024). This applies equally to pro se litigants. See Sanders, 176 Fed. Cl. at 169; In re Bailey, 521 F. App'x 920, 922 (11th Cir. 2013) ("pro se litigants must conform to procedural rules"); Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading…or other paper…an attorney *or unrepresented party* certifies that…") (emphasis added); Patterson v. Aiken, 841 F.2d 386, 388 (11th Cir. 1988) (affirming Rule 11 sanctions against a pro se litigant).

Plaintiff has clearly violated Rule 11. Non-existent law is indeed the opposite of existing law. "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023), *cited in* Park, 91 F.4th at 615. The resultant harm from the use of fake cases cannot be understated. It is not simply a waste of the Court's time:

> There is potential harm to the reputation of judges and courts whose

> names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

Mata, 678 F. Supp. 3d at 448-449. The Court will proceed in reviewing Defendants' amended motion to dismiss and will rely on Plaintiff's response only where the arguments are supported by existing case law. Separately, Plaintiff is ordered to show cause in writing explaining—at a minimum—how she conducted legal research (including the use of any AI platforms), how the inaccurate citations occurred, what if anything she did to validate the citations and stated holdings, and why sanctions under Rule 11 should not be imposed. Plaintiff's show cause response is due no later than **July 25, 2025**.

## V.   Discussion

### A.   TILA Claim

The purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms." 15 U.S.C. § 1601. Impacted consumers have two civil remedies under TILA: money damages and, in some cases, rescission of the loan. TILA provides a private right of action to consumers to recover money damages resulting from credit transactions where the creditor did not provide a proper advance disclosure of the credit terms. 15 U.S.C. § 1640(a).

Such claims must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). It is well established that a "violation 'occurs' when the transaction is consummated." Smith v. Am. Fin. Sys., Inc., 737 F.2d 1549, 1552 (11th Cir. 1984), *quoting* Wachtel v. West, 476 F.2d 1062, 1065 (6th Cir. 1973). Importantly, "nondisclosure is not a continuing violation for purposes of the statute of limitations." Id. TILA claims that are filed after the statute of limitations expires may still be salvaged "where the debtor ha[s] been prevented from [bringing suit] due to inequitable circumstances." Frazile v. EMC Mort. Corp., 382 F. App'x. 833, 838 (11th Cir. 2010) (internal marks omitted).

Here, the alleged violations occurred between December 2022 and January 2023, with Plaintiff signing the original bill of sale on December 5, 2022, and Defendant George providing her with the updated bill of sale on January 13, 2023. ECF No. 5 at 5-6. The consummation of the transaction and the alleged nondisclosure violation would have occurred at that time. As such, the statute of limitations for Plaintiff's TILA claim for money damages would have expired by January 2024. Plaintiff filed her original complaint on October 9, 2024. See ECF No. 1. Therefore, Plaintiff's TILA claim for money damages falls outside of the statute of limitations. Plaintiff fails to allege any inequitable circumstances that would have prevented her from filing the

claim sooner. In fact, Plaintiff's complaint suggests she was aware of the change in terms, evidenced by her statement about having "felt played" and her continued loan payments until April or May of 2024. ECF No. 5 at 5, 7.

In addition to providing a private right of action to recover money damages, TILA also gives "borrowers the right to rescind certain loans for up to three years after the transaction is consummated." Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. 259, 260 (2015). However, this right does not apply to all loans. See 15 U.S.C. §1640(a)(3). TILA provides consumers with the right to rescind "private education loan[s]," 15 U.S.C. § 1638(e)(7), and loans secured by a "principal dwelling," 15 U.S.C. § 1635(a). The TILA right to rescind does not extend to auto loans. Tedonzong v. Publix Employee Fed. Credit Union, 2023 WL 7492197 *4 (N.D. Ga. Oct. 6, 2023) ("TILA's right of rescission does not apply to car loans."); West v. Wells Fargo Auto, 2023 WL 199676 *3 (E.D. Penn. Jan. 17, 2023) (collecting cases, stating "[c]ourts routinely hold that the right to rescind under § 1635(a) does not apply to the purchase of motor vehicles").

In her response, Plaintiff abandons her claim for money damages, conceding the statute of limitations issue. ECF No. 23 at 7 (stating she seeks "rescission, not damages"). Plaintiff contends that unlike the one-year statute of limitations for money damages, she is still within the three-year window to

rescind the contract. Id. While it is true that "an obligor's right of rescission shall expire three years after the date of consummation of the transaction," 15 U.S.C. §1635(f), TILA extends no right of rescission for the type of transaction present in this case. This was an auto loan to finance Plaintiff's truck. It was neither a private education loan, nor was it secured by Plaintiff's principal dwelling. See Owens v. Cap. One Auto Fin., 2022 WL 19114 *3 (M.D. Fla. Jan. 3, 2022) ("Plaintiff's claims regarding rescission are due to be dismissed. Plaintiff fails to allege any facts to demonstrate that she would have a right of rescission under 15 U.S.C. § 1635…because there is no indication the [auto] loan is secured by Plaintiff's principal dwelling."). Therefore, no right of rescission exists in this case.

Because the statute of limitations for money damages has expired and there is no right of rescission for this type of transaction, Plaintiff's TILA claim should be dismissed.

**B.    FTC Act**

Section 5 of the FTC Act prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). The FTC is empowered to enforce such unfair methods, acts and practices. 15 U.S.C. § 45(a)(2). This means "there is no private cause of action implied under the Federal Trade Commission

Act." <u>Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.</u>, 195 F. App'x. 891, 894 (11th Cir. 2006). Rather, "only the Federal Trade Commission…has standing to bring enforcement actions under those statutes." <u>Anderson v. Uber Techs., Inc.</u>, 2019 WL 1880149 *2 (N.D. Fla. Apr. 9, 2019).

Here, Plaintiff is bringing these claims independent of the FTC. While Plaintiff alleges to have filed a complaint with the FTC regarding the violations, ECF No. 5 at 7, the FTC's apparent refusal to bring enforcement action does not grant Plaintiff with her own private right of action to pursue these claims. Plaintiff also fails to respond to this argument in her response. <u>See Jones v. Bank of Am., N.A.</u>, 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. Also, when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned"). Plaintiff's claims that Defendants violated the FTC Act should be dismissed.

**C.   Breach of Contract**

Although Plaintiff alleges a breach of contract under "federal common law," ECF No. 5 at 9, there is no federal claim associated with breach of contract in this case. See <u>Volt Info. Scis., Inc. v. Bd. Of Trs.</u>, 489 U.S. 468, 474 (1989) ("The interpretation of private contracts is ordinarily a question of

state law, rather than federal common law"); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) (holding "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state….[t]here is no federal general common law"). Since *Erie*, the Supreme Court has carved out only "narrow areas" where federal common law is applied: "those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641 (1981). "The cases in which federal courts may engage in common lawmaking are few and far between." Rodriguez v. Fed. Deposit Ins. Corp., 589 U.S. 132, 133 (2020). This case is not one of them. Further, Plaintiff fails to respond to Defendants' argument against this claim and has therefore abandoned it.

Here, the parties are Florida residents who signed the sales contract in Florida. Plaintiff's claim for breach of contract must be evaluated under Florida law. See Calderon v. Sixt Rent a Car, LLC, 114 F.4th 1190, 1199–200 (11th Cir. 2024) (applying the law of Florida, the forum state, in a diversity-based breach of contract action); Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995) (explaining Florida has adopted "the traditional rule of *lex loci contractus*" which "directs that, in the absence of a contractual

provision specifying the governing law, a contract…is governed by the law of the state in which the contract is made"). Plaintiff's federal breach of contract claim should be dismissed.[2]

**D.   State Law Claims**

As discussed, Plaintiff has failed to state a federal claim. Her remaining claims—absence of "As Is" signs, bait and switch tactics, unfair trade practices under FDUTPA, and breach of contract—arise solely under state law. Diversity jurisdiction is not available because Plaintiff and Defendants are residents of Florida. The Court should decline to exercise its supplemental jurisdiction over the remaining state law claims. While such a decision is within the Court's discretion, the Eleventh Circuit encourages "district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004); see also Lucero v. Trosch, 121 F.3d 591 (11th Cir. 1997); Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559 (11th Cir. 1994). Plaintiff's asserted state law claim should be "dismissed without prejudice and left for resolution to state tribunals." United Mine

---

[2] The Court will not address the merits or likelihood of success on a state law breach of contract claim. A dismissal of the federal claim does not prevent Plaintiff from asserting a breach of contract claim under Florida law in the appropriate state court forum, should Plaintiff have a good faith belief to do so.

Workers v. Gibbs, 383 U.S. 715, 726 (1966).

## VI. Recommendation and Order to Show Cause

For the reasons discussed, it is respectfully **RECOMMENDED** that Defendants' amended motion to dismiss, ECF No. 19, be **GRANTED**, and this action be **DISMISSED** for failure to state a claim on which relief may be granted and for lack of subject matter jurisdiction. The dismissal of the state law claims should be without prejudice.

Additionally, Plaintiff is **ORDERED** to file a response to this Court in writing no later than **July 28, 2025** explaining how she conducted legal research for her response to the amended motion to dismiss (including the use of any AI platforms), how the inaccurate citations occurred, what if anything she did to validate the citations and stated holdings, and why sanctions under Rule 11 should not be imposed on her. Should Plaintiff cite to any case law in her show cause response, she must include a certification that no AI platforms were used.

**IN CHAMBERS** at Tallahassee, Florida on July 15, 2025.

s/ Martin A. Fitzpatrick
MARTIN A. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).